**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| HELENA CHEMICAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-0191-ACL |
| | ) | |
| MARTY VANCIL d/b/a VANCIL FARMS, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MARTY VANCIL d/b/a VANCIL FARMS, | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HELENA CHEMICAL COMPANY, | ) | |
| STEVE HAWKINS, AND | ) | |
| TRIPP GILES, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT
MARTY VANCIL d/b/a VANCIL FARMS**

Defendant Marty Vancil d/b/a Vancil Farms ("Vancil"), by and through counsel, states

for his Answer and Affirmative Defenses to Plaintiff's Complaint as follows:

**PARTIES**

1.     Defendant admits the allegations set forth in paragraph 1 of the Complaint.

2.     Defendant admits the allegations set forth in paragraph 2 of the Complaint.

**JURISDICTION AND VENUE**

3.     Defendant denies the allegations set forth in paragraph 3 of the Complaint.

4.      Defendant admits the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.  Defendant denies the remaining allegations set forth in paragraph 4 of the Complaint.

5.      Defendant admits that he resides within the judicial district and division but denies all remaining allegations set forth in paragraph 5 of the Complaint.

## FACTS COMMON TO ALL COUNTS

6.      Defendant admits Helena offers the products and services listed in the second sentence of paragraph 6 of the Complaint.  Defendant lacks sufficient information or knowledge to admit or deny the first sentence, particularly with regard to the allegation that Helena is one of the foremost specialty formulators, and therefore denies the same.

7.      Defendant denies the allegations set forth in paragraph 7 of the Complaint and affirmatively states that he farms approximately 3,000 acres in Dunklin County, Missouri and purchased all of his agricultural products through Helena prior to the events that led to the filing of this lawsuit.

8.      Defendant admits his signature appears on Exhibit A.  Defendant denies all remaining allegations set forth in paragraph 8 of the Complaint.

9.      Defendant admits that he was allowed to order products and/or services from Helena on credit.  Defendant denies all remaining allegations set forth in paragraph 9 of the Complaint.

10.      Defendant denies the allegations set forth in paragraph 10 of the Complaint.

11.      Defendant denies the allegations set forth in paragraph 11 of the Complaint.

12.      Defendant denies the allegations set forth in paragraph 12 of the Complaint.

13.      Defendant denies the allegations set forth in paragraph 13 of the Complaint.

14.     Defendant lacks sufficient information or knowledge to admit or deny the allegations set forth in paragraph 14 of the Complaint and therefore denies the same.

15.     Defendant denies the allegations set forth in paragraph 15 of the Complaint.

16.     Defendant admits his signature appears on Exhibit C.  Defendant denies all remaining allegations set forth in paragraph 16 of the Complaint.

17.     Defendant admits that Exhibit C states, "Extended Terms Due Date:  3/15/17, Extended Terms Credit Limit:  $700,000.00."  Defendant denies all remaining allegations set forth in paragraph 17 of the Complaint.

18.     Defendant admits that Exhibit C provides for the accrual of interest at a rate of 18% per annum if the balance is not paid in full by the Extended Terms Due Date of 3/15/17. Defendant denies all remaining allegations set forth in paragraph 18 of the Complaint.

19.     Defendant admits the allegations set forth in paragraph 19 of the Complaint.

20.     Defendant denies the allegations set forth in paragraph 20 of the Complaint.

21.     Defendant denies the allegations set forth in paragraph 21 of the Complaint.

22.     Defendant denies the allegations set forth in paragraph 22 of the Complaint.

## COUNT I—BREACH OF CONTRACT

23.     In response to paragraph 23 of the Complaint, Defendant re-alleges and incorporates by reference his responses to paragraphs 1-22 above.

24.     Defendant denies the allegations set forth in paragraph 24 of the Complaint.

25.     Defendant admits that Helena provided various defective, contaminated goods to him on credit.  Defendant denies all remaining allegations set forth in paragraph 25 of the Complaint.

26.     Defendant denies the allegations set forth in paragraph 26 of the Complaint.

27.     Defendant denies the allegations set forth in paragraph 27 of the Complaint.

## COUNT II—ACCOUNT STATED

28.     In response to paragraph 28 of the Complaint, Defendant re-alleges and incorporates by reference his responses to paragraphs 1-27 above.

29.     Defendant admits the allegations set forth in paragraph 29 of the Complaint.

30.     Defendant admits the allegations set forth in paragraph 30 of the Complaint.

31.     Defendant denies the allegations set forth in paragraph 31 of the Complaint.

32.     Defendant denies the allegations set forth in paragraph 32 of the Complaint.

## COUNT III—QUANTUM MERUIT

33.     In response to paragraph 33 of the Complaint, Defendant re-alleges and incorporates by reference his responses to paragraphs 1-32 above.

34.     Defendant admits the allegations set forth in paragraph 34 of the Complaint and affirmatively states it was with Counterclaim Defendant Steve Hawkins' recommendation and approval.

35.     Defendant denies the allegations set forth in paragraph 35 of the Complaint.

36.     Defendant denies the allegations set forth in paragraph 36 of the Complaint.

## COUNT IV—UNJUST ENRICHMENT

37.     In response to paragraph 37 of the Complaint, Defendant re-alleges and incorporates by reference his responses to paragraphs 1-36 above.

38.     Defendant denies the allegations set forth in paragraph 38 of the Complaint.

39.     Defendant denies the allegations set forth in paragraph 39 of the Complaint.

40.     Defendant denies the allegations set forth in paragraph 40 of the Complaint.

41.     Defendant denies each and every allegation, title, count, claim, prayer for relief, "WHEREFORE" paragraph, and request for damages, fees, costs and interest contained in the Complaint that is not expressly admitted hereinabove.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint should be dismissed for want of jurisdiction over the subject matter following Defendant Vancil's filing of his Counterclaims set forth below in that there is neither a federal question pursuant to 28 U.S.C. §1331 nor complete diversity of citizenship among the parties to this action pursuant to 28 U.S.C. §1332(a)(1).

2.     Plaintiff's Complaint fails to state a claim upon which relief can be granted and the Complaint should, therefore, be dismissed.

3.     Plaintiff failed to mitigate its damages, if any.

4.     Plaintiff is barred from recovery due to its own material breach of contract and failure to perform conditions precedent to Defendant's performance in that Plaintiff failed to provide a safe product for application to Defendant's cotton crop as required by the agreement between the parties, causing Defendant to lose 1,010 acres of cotton with resulting damages to Defendant in excess of $1,452,000.00.

5.     Plaintiff is barred from recovery as a result of its own "unclean hands" in that, contrary to the parties' agreement, the Helena's Vision product that it delivered to Defendant was defective and contaminated with 2, 4-D, which killed Defendant's cotton crop, resulting in damages to Defendant.

6.     Plaintiff is barred from recovery in that Plaintiff was the "first to breach" by failing to provide Defendant with an effective, uncontaminated Vision product as Defendant requested; the Vision product Plaintiff provided to Defendant was defective and contaminated

with 2, 4-D; Defendant did not order any product labeled as containing or *possibly containing* 2, 4-D because 2, 4-D is fatal to cotton.

7.      Plaintiff is barred from recovery due to failure of consideration in that Plaintiff provided Defendant a Vision product that was defective and contaminated with 2, 4-D, which Plaintiff knew rendered the product wholly incompatible with Defendant's intended use.

8.      Plaintiff is barred from recovery due to its own fraud in that Plaintiff induced Defendant to enter into a contract described in the Complaint for the purchase of Plaintiff's Vision product by stating to Defendant that such product was safe for application to Defendant's cotton crop; at the time Plaintiff made such statement, Plaintiff knew the statement was false; the statement was, in fact, false; Plaintiff intended that Defendant would rely on the statement; Defendant did, in fact, rely on Plaintiff's statement; the statement was material to the transaction between Plaintiff and Defendant; and, in reliance on Plaintiff's false statement, Defendant applied Plaintiff's defective and contaminated product to his cotton crop and suffered damages resulting from the loss of 1,010 acres of cotton.

9.      Plaintiff is barred from recovery in that enforcement of the contract alleged by Plaintiff is against public policy where Plaintiff provided a defective Vision product, contaminated with 2, 4-D, and caused crop loss and damages to Defendant.

10.      Despite the fact that Defendant received products from Plaintiff, the Vision products Plaintiff provided were defective and contaminated with 2, 4-D, which killed 1,010 acres of Defendant's cotton.  Therefore, Plaintiff is barred from recovery in that there is no injustice in Defendant retaining the defective and contaminated products that killed his cotton.

11.      Plaintiff is barred from recovery in that Defendant did not retain any benefit from the defective and contaminated Vision products that Plaintiff provided to him.

12.     Plaintiff is barred from recovery in that Defendant was not enriched by the receipt of defective Vision products, contaminated with 2, 4-D, which killed Defendant's cotton.

13.     Plaintiff is barred from recovery in that the defective, 2, 4-D contaminated Vision products it provided to Defendant have no reasonable value.

14.     Plaintiff would be unjustly enriched if Defendant paid the amount demanded in Plaintiff's Complaint where the Vision products Plaintiff provided to Defendant were defective, contaminated with 2, 4-D, and killed 1,010 acres of Defendant's cotton.

15.     Plaintiff is barred from recovery in that it violated its covenant of good faith and fair dealing with Defendant.

16.     Plaintiff is barred from recovery in that any money which a court or jury may determine Defendant owes to Plaintiff shall be a setoff against the sums Plaintiff owes to Defendant for damages set forth in his Counterclaim below.

17.     Plaintiff is barred from recovery in that, in balancing the equities, Defendant does not owe money to Plaintiff; rather, Plaintiff owes money to Defendant.

18.     Defendant reserves his right to reserve the right to amend this Answer to assert any affirmative defense that may become available during the course of discovery, including all such defenses noted in Rule 8.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendant Marty Vancil d/b/a Vancil Farms respectfully requests that the Complaint be dismissed in its entirety, with prejudice, or, in the alternative that judgment be entered in his favor, for his costs and attorneys' fees, and for such other and further relief to which he may show himself entitled.

## COUNTERCLAIM

COMES NOW Defendant/Counterclaim Plaintiff Marty Vancil d/b/a Vancil Farms, by and through counsel, pursuant to Rule 13(a) of the Federal Rules of Civil Procedure, and without waiving any defense or assertion concerning jurisdiction or venue, asserts this Counterclaim against Plaintiff/Counterclaim Defendant Helena Chemical Company, Counterclaim Defendant Steve Hawkins and Counterclaim Defendant Tripp Giles:

## PARTIES

1.      Defendant/Counterclaim Plaintiff Marty Vancil d/b/a Vancil Farms ("Vancil") resides in Campbell, Dunklin County, Missouri.

2.      Plaintiff/Counterclaim Defendant Helena Chemical Company ("Helena") is a Delaware corporation with its principal place of business in Collierville, TN.  Helena owns and operates a branch location at 34085 State Highway 25, Clarkton, Dunklin County, Missouri 63837.  Helena is present and transacts substantial business in Missouri and has a registered agent in Missouri.  Further, Helena itself or through its agents transacted business in Dunklin County, Missouri, entered into contracts in Dunklin County, Missouri, committed tortious acts in Dunklin County, Missouri.

3.      Counterclaim Defendant Steve Hawkins ("Hawkins") is a Missouri resident and may be served with process at his residence at 1207 Charlotte Drive, Malden, Dunklin County, Missouri 63863-1307 or at his place of employment Helena Chemical Company, 34085 State Highway 25, Clarkton, Dunklin County, Missouri 63837.  At all relevant times herein, Hawkins worked for Helena as its agent, servant, and/or employee.

4.      Counterclaim Defendant Tripp Giles ("Giles") is a Missouri resident and may be served with process at his residence at 1501 Ganton Drive, Dexter, Missouri 63841-1806 or at

his place of employment Helena Chemical Company, 34085 State Highway 25, Clarkton,

Dunklin County, Missouri 63837.  At all relevant times herein, Giles worked for Helena as its

agent, servant, and/or employee.

**JURISDICTION AND VENUE**

5.      Although the amount in controversy exceeds seventy-five thousand dollars

($75,000.00), upon the filing of this Counterclaim, jurisdiction and venue are not proper in this

Court as there is neither a federal question present, as required by 28 U.S.C. § 1331, nor is there

complete diversity of citizenship between the parties to this action, as required by 28 U.S.C. §

1332(a)(1).

6.      Therefore, this case should be remanded to the Circuit Court of Dunklin County,

Missouri where jurisdiction and venue are proper in that each of the parties either resides in

Dunklin County, Missouri, maintains a business in Dunklin County, Missouri, or can be found in

Dunklin County, Missouri, and the acts giving rise to the claims alleged in the Compliant and,

now, in this Counterclaim arose in Dunklin County, Missouri.

**FACTS COMMON TO ALL COUNTS**

7.      Vancil farms approximately 3,000 acres in Dunklin County, Missouri.

8.      Vancil has done business at Helena's branch location in Clarkton, Dunklin

County, Missouri for at least the past 15 years.

9.      For several of the past 15 years, Hawkins worked at Helena's branch location in

Clarkton, Dunklin County, Missouri, in a number of positions, including as the division manager,

branch manager, salesman and certified crop consultant/adviser.

10.     Helena utilizes crop consultants, many of whom have obtained the credentials of

Certified Crop Adviser.

11.     As Helena advertised in an article titled, "Setting Higher Standards for Helena Consultants" posted on its website on April 27, 2016, "By gaining the CCA credential, Helena's consultants have demonstrated they have the commitment, education and expertise to make sound agronomic recommendations for our growers. The CCA certification program sets high standards for knowledge, skill and conduct within the field of agronomy – it's a standard on which both growers and employers depend."

12.     Over the years, Vancil developed a loyal business relationship with Hawkins and Helena.

13.     For as long as Vancil did business with Hawkins at Helena, Hawkins held his credentials as a Certified Crop Adviser, and, over the years, Vancil came to rely on Hawkins' expertise as a certified crop consultant/adviser for Helena.

14.     Vancil trusted and reasonably relied upon Hawkins' recommendations without question.

15.     At all relevant times herein, Giles and Hawkins worked for Helena as its agent, servant, and/or employee.  Specifically in 2016, Giles was the manager for Helena's branch location in Clarkton, Dunklin County, Missouri, as well as a division manager, and Hawkins continued to work there as a salesman and as a certified crop consultant/adviser.  As manager, Giles was responsible for the business conducted at Helena's branch location in Clarkton, Dunklin County, Missouri, and was responsible and liable for all acts, omissions, conduct, and representations taken by Helena's agents, servants, and/or employees at the Clarkton, Dunklin County, Missouri location in furtherance of Helena's business operations with its customers.

16.     In crop year 2016, prior to planting, Vancil consulted with Hawkins at Helena's branch location in Clarkton, Dunklin County, Missouri, regarding his plans for that year, including seed and chemical selection and budgets.

17.     At that time, Hawkins advised Vancil to use Helena's Vision product on the 1,300 acres of cotton Vancil planned to plant.  Hawkins was acting within the scope and course of his employment for Helena when he recommended, advised and instructed Vancil to purchase and use Helena's Vision on Vancil's 2016 cotton crop.

18.     Vision is a dicamba herbicide used to control broadleaf weeds.

19.     Vision is approved and marketed for preplant use on cotton.

20.     In marketing Vision, Helena maintains that Vision has minimal volatility.

21.     Presumably as a result of Vision's alleged low volatility, Helena charges its customers a higher price for Vision than for other forms of dicamba.

22.     Based on Hawkins' recommendation as Helena's salesman and Certified Crop Adviser to Vancil, Vancil ordered Helena's Vision herbicide, EPA registration number 5905-576, from Helena's Clarkton, Dunklin County, Missouri location, for preplant and pre-emergent use on 1,300 acres of cotton.

23.     Vancil planted his 1,300 acres of cotton over a three week period, from May 7 to May 25, 2016.

24.     Relying upon Hawkins' expertise as Helena's salesman and Certified Crop Adviser, as well as Hawkins' knowledge of Vancil's farming operations, Vancil applied Helena's Vision to his 1,300 acres of cotton shortly after planting but before emergence at a rate of 1 pint per acre as Hawkins instructed.

25.     From the point of emergence, Vancil's cotton exhibited signs of 2, 4-D damage.

26.     2, 4-D is an herbicide that controls broadleaf weeds.  2, 4-D has been used as a pesticide since the 1940s and is wholly incompatible with cotton.

27.     Vancil consulted with Hawkins on a daily basis regarding the signs of 2, 4-D damage exhibited by Vancil's cotton crop.

28.     Initially, Hawkins told Vancil that the cotton would grow out of the problems it was exhibiting.

29.     Later, Hawkins recommended Vancil apply foliar fertilize.

30.     Vancil followed Hawkins' recommendations to no avail, as the cotton showed no signs of improvement and Vancil continued to lose plant populations.

31.     Hawkins and Giles drove out to view Vancil's struggling cotton.

32.     Hawkins and Giles agreed that the damage to Vancil's cotton looked like 2, 4-D damage and that the cotton was not going to survive.

33.     Once it was clear to Vancil that his cotton had sustained 2, 4-D damage, Vancil promptly mitigated his losses by disking the damaged cotton during the last week of June 2016 and planting soybeans during the first week of July 2016.

34.     All of Vancil's cotton fields were damaged by the application of Helena's Vision.

35.     Vancil lost 1,010 of the 1,300 acres of cotton that he planted in 2016.

36.     Vancil was able to salvage 290 acres of cotton, though the yields were suppressed.

37.     Thereafter, Vancil had Helena's Vision tested by two different laboratories, Mississippi State Chemical Laboratory and Waypoint Analytical, and both labs found 2, 4-D present in Helena's Vision.  Copies of the lab reports are attached hereto as Exhibits 1 and 2.

38.     As the chemical testing of Helena's Vision demonstrated, Helena's product was

defective in that it contained 2, 4-D.

39.     Neither Helena, Hawkins nor Giles provided any warning to Vancil that Helena's Vision either contained or might contain 2, 4-D.

40.     Applying Helena's Vision, contaminated with 2, 4-D, created an unreasonably dangerous condition to Vancil's cotton crop and directly resulted in Vancil's loss of all but 290 of the 1,300 acres of cotton that he planted in crop year 2016.

41.     As a result of applying Helena's Vision, which was defective and contaminated with 2, 4-D, Vancil suffered damages in excess of $1,452,000.00.

42.     Vancil spoke to several Helena representatives, including Hawkins and Giles, as well as  Louis Rodrigue, Vice President, Southern Business Unit, and Joe Webber, South Texas Division Manager, regarding the damages he suffered as a result of applying Helena's Vision to his cotton.  Helena told Vancil, "don't worry about it—you're not going to go out of business."

## COUNT I—PRODUCTS LIABILITY
### Strict Liability—Defective Product

43.     Vancil incorporates by reference the other paragraphs of his Counterclaim as though fully set forth herein.

44.     Counterclaim Defendants Helena, Hawkins and Giles sold and/or provided Helena's Vision to Vancil in the course of the Counterclaim Defendants' business.

45.     Helena's Vision was in a defective condition in that it was contaminated with 2, 4-D.

46.      Helena's Vision was unreasonably dangerous when put to a reasonably anticipated use by Vancil.

47.     Vancil used Helena's Vision on his 1,300 acres of cotton in a manner reasonably anticipated and instructed by Counterclaim Defendants.

48.     Vancil was damaged as a direct result of the defective condition that existed when Helena sold its Vision to Vancil.

49.     Because of the intentional and tortious nature of Counterclaim Defendants' acts and omissions, in addition to his actual damages, Vancil is entitled to recover punitive damages and reasonable attorney's fees.

WHEREFORE, Defendant/Counterclaim Plaintiff Marty Vancil d/b/a Vancil Farms respectfully requests judgment in his favor and against Counterclaim Defendants Helena, Hawkins and Giles, jointly and severally, for such damages as are fair and reasonable to compensate Vancil for his actual damages, punitive damages, reasonably attorney's fees and all costs of court and for such other and further relief to which he may show himself entitled.

### COUNT II—PRODUCTS LIABILITY
### Strict Liability—Failure to Warn

50.     Vancil incorporates by reference the other paragraphs of his Counterclaims as though fully set forth herein.

51.     Counterclaim Defendants Helena, Hawkins and Giles sold and/or provided Helena's Vision to Vancil in the course of the Counterclaim Defendants' business.

52.     Helena's Vision was unreasonably dangerous when put to a reasonably anticipated used by Vancil, who had no knowledge that it was defective and contaminated with 2, 4-D prior to applying the same to his 1,300 acres of cotton as recommended and instructed by Counterclaim Defendant Hawkins.

53.     None of the Counterclaim Defendants gave Vancil any warning that Helena's Vision was either contaminated with 2, 4-D or that it possibly could be contaminated with 2, 4-D.

54.     Vancil used Helena's Vision in a manner reasonably anticipated by following Hawkins' recommendations and instructions for use as Helena's Salesman and Certified Crop Adviser to Vancil.

55.     Counterclaim Defendants knew or by using ordinary care should have known of the dangerous condition present in Helena's Vision.

56.     Counterclaim Defendants failed to warn Vancil of the danger.

57.     Vancil suffered damages to his cotton crop as a direct result of the Counterclaim Defendants' failure to warn.

58.     Because of the intentional and tortious nature of Counterclaim Defendants' acts and omissions, in addition to his actual damages, Vancil is entitled to recover punitive damages and reasonable attorney's fees.

WHEREFORE, Defendant/Counterclaim Plaintiff Marty Vancil d/b/a Vancil Farms respectfully requests judgment in his favor and against Counterclaim Defendants Helena, Hawkins and Giles, jointly and severally, for such damages as are fair and reasonable to compensate Vancil for his actual damages, punitive damages, reasonably attorney's fees and all costs of court and for such other and further relief to which he may show himself entitled.

## COUNT III—PRODUCTS LIABILITY
### Negligence—Defective Product

59.     Vancil incorporates by reference the other paragraphs of his Counterclaims as though fully set forth herein.

60.     Helena manufactured or designed Vision.

61.     Helena's Vision had a specific latent defect or hazard in that it was contaminated with 2, 4-D.

62.     Helena failed to use ordinary care to manufacture or design Vision to be reasonably safe and failed to warn Vancil of the risk of harm to his cotton crop from the hidden defect or hazard.

63.     Vancil suffered damages to his cotton crop as a direct result of Helena's negligent manufacture, design or failure to warn.

64.     Because of the intentional and tortious nature of Counterclaim Defendants' acts and omissions, in addition to his actual damages, Vancil is entitled to recover punitive damages and reasonable attorney's fees.

WHEREFORE, Defendant/Counterclaim Plaintiff Marty Vancil d/b/a Vancil Farms respectfully requests judgment in his favor and against Counterclaim Defendants Helena, Hawkins and Giles, jointly and severally, for such damages as are fair and reasonable to compensate Vancil for his actual damages, punitive damages, reasonably attorney's fees and all costs of court and for such other and further relief to which he may show himself entitled.

## COUNT IV—PRODUCTS LIABILITY
### Negligence—Failure to Warn

65.     Vancil incorporates by reference the other paragraphs of his Counterclaims as though fully set forth herein.

66.     Counterclaim Defendants sold Helena's Vision to Vancil in the course of the Counterclaim Defendants' business.

67.     Helena's Vision was defective in that it was contaminated with 2, 4-D, and, as a result, it was unreasonably hazardous when put to the reasonably expected use of application to Vancil's cotton crop as recommended by the Counterclaim Defendants.

68.     Counterclaim Defendants had no reason to believe that Vancil would realize Helena's Vision was contaminated with 2, 4-D prior to applying the same to his 1,300 acres of cotton.

69.     Counterclaim Defendants knew or, by using ordinary care, should have known Helena's Vision was contaminated with 2, 4-D.

70.     Counterclaim Defendants failed to warn Vancil of the danger.

71.     As a result of the Counterclaim Defendants' failure to warn Vancil of the danger Helena's Vision posed to Vancil's cotton crop, Vancil suffered direct and proximate damages.

72.     Because of the intentional and tortious nature of Counterclaim Defendants' acts and omissions, in addition to his actual damages, Vancil is entitled to recover punitive damages and reasonable attorney's fees.

WHEREFORE, Defendant/Counterclaim Plaintiff Marty Vancil d/b/a Vancil Farms respectfully requests judgment in his favor and against Counterclaim Defendants Helena, Hawkins and Giles, jointly and severally, for such damages as are fair and reasonable to compensate Vancil for his actual damages, punitive damages, reasonably attorney's fees and all costs of court and for such other and further relief to which he may show himself entitled.

### COUNT V— FRAUDULENT MISREPRESENTATION

73.     Vancil incorporates by reference the other paragraphs of his Counterclaims as though fully set forth herein.

74.     At the time Vancil agreed to order Vision from Helena based on Hawkins' recommendations as Helena's Salesman and Certified Crop Adviser to Vancil, Hawkins represented to Plaintiff that Vision was safe to apply to Vancil's 1,300 acres of cotton.

75.     Further, Hawkins provided Vancil with instructions and rates of application for Vision to Vancil's cotton.

76.     Hawkins' representation to Vancil that Helena's Vision was safe to apply to Vancil's 1,300 acres of cotton was false.

77.     When Hawkins represented to Vancil that Helena's Vision was safe, Hawkins either knew at the time he made that statement to Vancil that the statement was false or Hawkins did not know whether it was true or false yet made the statement anyway.

78.     In fact, Helena's Vision was not safe for application to Vancil's cotton in that Helena's Vision was defective and contaminated with 2, 4-D.

79.     Hawkins' representation to Vancil was material to Vancil's decision to order Helena's Vision for application to his 2016 cotton crop.

80.     Vancil relied on Hawkins' recommendations and representation set forth in paragraph 74 above and used ordinary care in so relying, in that Hawkins was Helena's Salesman and Certified Crop Adviser for Vancil and was knowledgeable of and experienced with Helena's Vision.

81.     As a direct result of the representations set forth in paragraph 74 above, Vancil has been damaged in excess of $1,452,000.00.

82.     Counterclaim Defendants' action in falsely representing the condition, effectiveness and appropriateness of Vision for Vancil's use on 1,300 acres of cotton was intentional, willful and outrageous, due to the Counterclaim Defendants' greed, evil motive and reckless indifference to Vancil.  Therefore, an award of punitive damages is warranted by the Counterclaim Defendants' conduct.

WHEREFORE, Defendant/Counterclaim Plaintiff Marty Vancil d/b/a Vancil Farms respectfully requests judgment in his favor and against Counterclaim Defendants Helena, Hawkins and Giles, jointly and severally, for such damages as are fair and reasonable to compensate Vancil for his actual damages, punitive damages, reasonably attorney's fees and all costs of court and for such other and further relief to which he may show himself entitled.

<b><u>COUNT VI—BREACH OF CONTRACT</u></b>

83.      Vancil incorporates by reference the other paragraphs of his Counterclaims as though fully set forth herein.

84.      In 2016, Vancil and Helena entered into a contract for the sale and purchase of Vision for use on Vancil's 1,300 acres of cotton.

85.       Pursuant to the Sales Agreement, the unpaid invoices, and the Extended Terms Agreement attached to the Complaint, Helena agreed to provide Vision to Vancil on credit and Vancil was to pay for the Vision in accordance with the terms set forth in those documents.

86.      Instead of providing Vancil with an herbicide that was safe for him to apply to his 1,300 acres of cotton, Helena provided Vancil with a defective and contaminated version of Vision, which killed all but 290 acres of Vancil's 2016 cotton crop.

87.      Because Helena was the first to breach the parties' contract and did so with unclean hands, Vancil suffered damages in excess of $1,452,000.00.

WHEREFORE, Defendant/Counterclaim Plaintiff Marty Vancil d/b/a Vancil Farms respectfully requests judgment in his favor and against Counterclaim Defendant Helena for such damages as are fair and reasonable in an amount in excess of $1,452,000.00, for his costs of suit and for such other and further relief to which he may show himself entitled.

Respectfully submitted,

**/s/Shannon Wright Morgan**
SHANNON WRIGHT MORGAN
Federal Bar No. 50917MO

PELTS, MCMULLAN, EDGINGTON & MORGAN, LLP
217 College Avenue
P.O. Box 68
Kennett, MO 63857
(573) 888-4644
Fax:  (573) 888-4999
shannonmorgan@pmelaw.net

ATTORNEYS FOR DEFENDANT MARTY VANCIL
d/b/a VANCIL FARMS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon all parties of record via the Court's electronic filing system on January 2, 2018.

**/s/Shannon Wright Morgan**
SHANNON WRIGHT MORGAN